## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2017, 6:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

April L. Edwards
Boonville, Indiana

ATTORNEY FOR APPELLEE

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Traci Kron,<br><br>*Appellant,*<br><br>v.<br><br>Donna Sherman, as Personal Representative of the Unsupervised Estate of Alan Kron, Deceased,<br><br>*Appellee.* | September 8, 2017<br><br>Court of Appeals Case No. 74A01-1702-EU-348<br><br>Appeal from the Spencer Circuit Court.<br>The Honorable Jon A. Dartt, Judge.<br>Trial Court Cause No. 74C01-1512-EU-45 |

**Sharpnack, Senior Judge**

## Statement of the Case

[1]     Traci Kron appeals the trial court's partial denial of her Petition to Enforce Terms of Will. Donna Sherman, as Personal Representative of the

Unsupervised Estate of Alan Kron, Deceased, cross-appeals the trial court's decision. We reverse and remand with instructions.

## Issue

Traci raises two issues, but one restated issue is dispositive of this appeal: whether the trial court erred in ordering Sherman to pay Traci funds from a bank account Alan Kron owned jointly with his brother, William Kron.

## Facts and Procedural History

William Kron and Alan Kron farmed their family's land together, jointly owning all assets. In 2009, they opened a joint account ("the account") with Hoosier Hills Credit Union, into which Alan deposited farm funds and from which Alan paid the farm's bills. The account was governed by a contract called a "membership application agreement," the relevant terms of which we discuss in more detail below. Ex. Vol. 1, Stipulated Ex. B.

Years later, Alan and Traci began a romantic relationship. On March 18, 2015, he withdrew $20,000 from the account to purchase a truck for Traci. On June 15, 2015, he withdrew $81,487.54 from the account to pay off a mortgage on property that had been owned by Traci, which they intended to use as their marital home.

Alan and Traci executed a pre-nuptial agreement on July 20, 2015. The agreement stated that if Alan predeceased Traci, Traci would "receive Alan's share of the Hoosier Hills Credit Union checking account jointly owned with

William Kron." *Id.*, Petitioner's Ex. 1. Alan and Traci married on July 22, 2015.

[6] On September 4, 2015, Alan executed a Last Will and Testament. Pursuant to the will, Alan granted to Traci his "share in a Hoosier Hills Credit Union checking account owned jointly with my brother, William Kron." Appellant's App. Vol. 2, p. 17. Alan appointed William as his personal representative and further appointed Donna Sherman, his sister, to serve as an alternate personal representative if William was unable or unwilling to serve.

[7] Alan died suddenly on November 21, 2015. On that date, the account had a balance of $102,446.62.

[8] On December 1, 2015, Donna Sherman filed a petition to probate a lost or destroyed will and for appointment of personal representative. Sherman claimed the September 4, 2015 will was lost or destroyed. She further claimed William was unwilling to serve as personal representative. The trial court appointed Sherman as personal representative.

[9] On February 2, 2016, Traci filed a Petition to Enforce Terms of Will, to which she attached a copy of the will. She claimed she was entitled to one-half of the account's value. Sherman filed a response denying Traci's claim. The court held an evidentiary hearing over the course of several days. The court appointed a guardian ad litem to represent William's interests in the proceeding.

On January 24, 2017, the court issued an order. The court determined that although William would normally receive the entire account balance after Alan's death, Alan, "express[ed] contrary intent" in the prenuptial agreement and the will. *Id.* at 7. The court determined Traci was entitled to receive some funds from the account, but considering Alan's withdrawals for Traci's benefit (the car and the mortgage payoff), she was entitled to receive only $492.57. The court further ordered Sherman to pay Traci $3,500 for her attorney's fees because Traci brought a good faith claim. This appeal followed.

## Discussion and Decision

Traci argues the trial court correctly determined that she is entitled to a share of the account but erred in concluding William's withdrawals from the account should be deducted from her share. Sherman argues, among other claims, that she cannot give Traci funds from the account because William has a right of survivorship and is entitled to the entire account.

The parties differ on the standard of review this Court should use to evaluate the case. Traci argues the trial court sua sponte issued findings of fact and conclusions thereon. Sherman argues the trial court issued a general judgment, and this Court should review the parties' claims accordingly. We need not resolve this disagreement because, with respect to the account, we are being asked to apply the law to undisputed facts. Thus, our standard of review is de novo whether we are addressing findings of fact or a general judgment. *See In re Marriage of Gertiser*, 45 N.E.3d 363, 369 (Ind. 2015) (in review of findings and

conclusions, questions of law reviewed de novo); *Hutchison v. Trilogy Health Servs., LLC*, 2 N.E.3d 802, 805 (Ind. 2014) (in review of general judgment, questions of law reviewed de novo).

[13] Before turning to the merits of the parties' claims, Tracy states Sherman has waived for appellate review any claim that William is entitled to the entire account per a right of survivorship. Specifically, Tracy asserts Sherman did not raise the claim in the trial court.

[14] Appellate review presupposes that a litigant's arguments have been raised and considered in the trial court. *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013). Thus, an argument or issue not presented to the trial court is generally waived for appellate review. *GKC Ind. Theatres, Inc. v. Elk Retail Inv'rs, LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). The rule of waiver in part protects the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. *Id.*

[15] In this case, William's guardian ad litem, Bryan Rudisill, argued to the trial court that William was entitled to all funds in the account because it was a joint account with a right of survivorship, and neither William nor Alan intended to alter the right of survivorship when the account was opened in 2009. Tr. Vol. 2, pp. 49-50. Rudisill also cited the governing statute, which we discuss in more detail below. *Id.* at 104. Further, the trial court was clearly aware of the issue because it stated in the final order, "Normally, upon the death of one joint account owner, the other owner would be the owner of all of the account."

Appellant's App. Vol. 2, p. 7. The survivorship issue was presented to the trial court, and Sherman has not waived this issue for appellate review.

[16] Addressing the question of joint survivorship requires us to consider the governing statutes and the contract that governs the account. It is useful to recount our rules of statutory and contract construction. In the interpretation of statutes, our goal is to determine and give effect to the intent of the legislature that promulgated it. *Porter Dev., LLC v. First Nat. Bank of Valparaiso*, 866 N.E.2d 775, 778 (Ind. 2007). Our primary resource for this determination is the language used by the legislature. *Id.* Similarly, in interpreting a written contract a court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 603 (Ind. 1990).

[17] Where a statute is unambiguous, the Court will read each word and phrase in its plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings. *Porter Dev.*, 866 N.E.2d at 775. When the terms of a contract are drafted in clear and unambiguous language, we will also apply the plain and ordinary meaning of that language and enforce the contract according to those terms. *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012).

[18] According to Indiana Code section 32-17-11-17 (2009), "Unless there is clear and convincing evidence of a different intent, during the lifetime of all parties, a

joint account belongs to the parties in proportion to the net contributions by each party to the sums on deposit." Further, "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention *at the time the account is created*." Ind. Code § 32-17-11-18 (2009) (emphasis added). "A right of survivorship arising . . . from the express terms of the account . . . cannot be changed by will." [1] *Id.*

[19] Based on the plain language of the statutes, if the joint owners of an account intended for the account to be distributed to someone other than the surviving party or parties, there must be clear and convincing evidence of a different intent when the account was opened. In other words, Indiana Code section 32-17-11-18 creates a statutory presumption that a survivor to a joint account is the intended receiver of the proceeds in that account, and a challenger must rebut the presumption. *Dean v. Pelham*, 899 N.E.2d 662, 666 (Ind. Ct. App. 2008), *trans. denied*.

[20] Alan and William opened the account in 2009, and the membership application agreement states, in relevant part:

> The owners of this account hereby agree with each other and with said Credit Union that all sums now paid in on shares or heretofore or hereafter paid in on shares by any and all of said joint owners to their credit as such joint owners with all

---

[1] Owners of an account may later alter the rights of survivorship as set forth in the account agreement, but such a change must be submitted to the financial institution in writing, during an owner's lifetime. Ind. Code § 32-17-11-19 (2002). None of the parties argue that Alan followed the statutory process to alter the right of survivorship.

accumulations thereon, are and shall be owned by them jointly, with right of survivorship and be subject to the withdrawal or receipt of any of them, and payment to any of them or the survivor or survivors shall be valid and discharge said Credit Union from any liability for such payment. The joint owners also agree to the terms and conditions of the account as established by the Credit Union from time to time.

Ex. Vol. 1, Stipulated Ex. B.

[21] Based on the plain language of the contract, the account was jointly owned and the owners had a right of survivorship. None of the parties submitted any evidence, let alone clear and convincing evidence, that Alan or William had any contrary intent in 2009 when the account was opened.

[22] William, as the survivor, was entitled to all funds in the account upon Alan's death regardless of Alan's statements in his prenuptial contract or his will. *See Decker v. Zengler*, 883 N.E.2d 839, 845 (Ind. Ct. App. 2008) (decedent's statement in will that joint bank accounts were to be divided among all children did not affect the right of survivorship; joint owner was entitled to receive all funds under the terms of the account), *trans. denied*. The trial court erred by ordering Sherman to share the account's funds with Traci because William, not Sherman, owned the account. *See In re Estate of Herin*, 40 N.E.3d 495, 500 (Ind. Ct. App. 2015) (no error in determining estate lacked ownership rights over certificate of deposit accounts; challenger failed to prove by clear and convincing evidence an intent to alter the right of survivorship in the accounts when they were opened).

Sherman specifically states she "is not seeking to recover the funds Alan withdrew" from the account for Traci's truck and Alan and Traci's marital home. Appellee's Br. p. 6. This disclaimer is appropriate because the funds do not belong to Sherman in any event. In addition, Sherman does not assert the trial court erred in awarding attorney's fees to Traci in recognition of her good faith claim, so that part of the judgment stands. We reverse and remand with instructions to the trial court to otherwise vacate its prior order and to issue a new order stating neither Sherman nor Traci are entitled to any proceeds from the Hoosier Hills Credit Union account.

## Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand with instructions.

Reversed and remanded.

Baker, J., and Barnes, J., concur.