

**FILED**

Jun 29 2015, 8:44 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| Joseph A. Colussi<br>Madison, Indiana | Mary Jean Stotts<br>Madison, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

<table>
<tr>
<td>

In the Matter of the Supervised Estate of Ralph E. Herin,

Beth M. Herin and Belinda Herin McIntyre,

*Appellants-Defendants,*

     v.

Stephen E. Herin,

*Appellee-Plaintiff.*

</td>
<td>

June 29, 2015

Court of Appeals Case No.
39A05-1411-ES-537
Appeal from the Jefferson Circuit Court.
The Honorable Darrell M. Auxier, Judge.
Cause No. 39C01-1310-ES-91

</td>
</tr>
</table>

**Shepard, Senior Judge**

## Statement of the Case

[1] The daughters of the late Ralph E. Herin contend that various certificates of deposit held by a bank as joint property of Mr. Herin and his son should belong in the Herin estate rather than pass to their brother. They argue that

administrative deficiencies surrounding creation of the CDs should mean they were not really joint property at all.

[2] We conclude that the legislative and judicial history surrounding Indiana's probate code answers this question. Absent proof that Ralph Herin intended something other than joint ownership with right of survivorship, the Non-Probate Transfer Act leads to judgment for the son.

## Issues

[3] Appellants Beth M. Herin and Belinda Herin McIntyre present the following issues on appeal:

> I. Whether the trial court wrongly concluded that Stephen E. Herin was the surviving joint owner of the CDs and thus the Estate of Ralph E. Herin had no ownership interest in them, and
>
> II. Whether the trial court's decision to hold a second bench trial *sua sponte* nearly forty-five days after the first bench trial was clearly erroneous.

## Facts and Procedural History

[4] Beth M. Herin, Belinda Herin McIntyre, and Stephen E. Herin are the adult children of Ralph E. Herin and Beverly L. Herin. The senior Herins owned 138 acres in northeastern Jefferson County, consisting of two tracts. Ralph, Beverly, and Beth lived in the family home on one tract. Stephen lived in a home on the other tract. Belinda, who was married, lived with her husband in Cincinnati, Ohio.

[5]     Beverly and Ralph made last wills leaving everything they owned to the other. At the same time, Ralph and Beverly transferred both farms to their son Stephen, thereby removing the farms from their probatable estate. The wills provided that the farm equipment and tools would devise to Stephen. The household furnishings were to be divided among the three children as provided in a separate list. Beverly's jewelry and the residue of their estate would pass to Beth and Belinda.

[6]     During their lifetime, Ralph and Beverly invested in four CDs totaling $160,000, issued by the River Valley Financial Bank. The CD agreements provided that they were joint accounts with rights of survivorship.

[7]     Beverly predeceased Ralph. On February 9, 2011, Ralph and Stephen went to the Bank and executed documents for each of the four certificates of deposit indicating that Ralph was adding Stephen as a joint co-owner on each. Ralph and Stephen signed the documents in the presence of a Bank representative, who added her initials and the numeric indication of the branch location where the transactions occurred. That same day, father and son executed agreements for other accounts at the Bank, but those transactions are not the subject of this appeal.

[8]     Ralph died in July 2013, and under Ralph's will the Bank became the personal representative of his estate. The Bank petitioned the trial court for guidance concerning distribution of the four CDs. Stephen, Beth, and Belinda, as beneficiaries of the estate, were allowed to intervene in the action.

[9] The trial court held a hearing on the Bank's petition. Later, the court declared that it lacked sufficient evidence to decide the matter. S*ua sponte*, and over objection, it ordered a supplemental hearing. Ultimately, the court concluded that the CDs were the sole property of Stephen, rather than belonging to the Estate. Beth and Belinda appeal.

# Discussion and Decision

## Standard of Review

[10] The trial court issued findings of fact pursuant to Indiana Trial Rule 52. Appellate review thus turns on whether the evidence supports the trial court's findings and whether those findings support the judgment. *Oil Supply Co., Inc. v. Hires Parts Serv., Inc.*, 726 N.E.2d 246 (Ind. 2000). Deferring to the trial court's proximity to the issues, we will disturb the judgment only where there is no evidence supporting the trial court's findings or the findings fail to support the judgment. *Id.* Thus, those seeking to reverse the trial court's judgment labor under the formidable task of demonstrating that the trial court's findings are clearly erroneous. Ind. Trial Rule 52(A).

# I. Is Stephen a Surviving Joint Owner of the CDs?

[11] The three siblings approach the issue from very different vantage points. Stephen claims that to undo the trial court's judgment, his sisters must prove that the proceeds from the jointly held CDs should not pass to him. Beth and Belinda, by contrast, argue that the process used to add Stephen to the accounts was so deficient the CDs should not be characterized as jointly held, and the

trial court erred by doing just that. If that is the case, the CDs would belong to the estate and not Stephen.

[12] Both sides framed arguments to the trial court in terms of the sisters' standing to challenge whether the CDs were jointly held by Ralph and Stephen. The trial court agreed with Stephen that Beth and Belinda lacked standing to challenge the method used to add him to the CDs. It may be more accurate to say that Beth and Belinda were not the real parties in interest to a claim that the Bank used faulty process in adding Stephen to the accounts. The real party in interest requirement is similar to the standing requirement. *Ind. Dep't. of Envtl. Mgmt. v. Jennings Northwest Reg'l Utilities*, 760 N.E.2d 184, 189 (Ind. Ct. App. 2001). In both, the object is to insure that the party before the trial court has the substantive right to enforce the asserted claim. *Id.* A real party in interest is the owner of the right to be enforced and also entitled to the fruits of the action. *Id.*

[13] The Bank, Ralph, and Stephen were the actual participants in the transaction adding Stephen. None of those immediate parties ever challenged the adequacy of the processes. Stephen has an interest in whether the proceeds are his or the estate's. As beneficiaries of the estate, Beth and Belinda have an interest only in what assets are included in the estate and how they are distributed.

[14] Put another way, while the parties to the CD transaction—the Bank, Ralph, and Stephen—could be heard to complain about the process under which the CD actions were taken, the burden for Belinda and Beth is different. Under

Indiana's probate code, any sums remaining on deposit at the death of a party to a joint account belong to the surviving party, "unless there is clear and convincing evidence of a different intention at the time the account was created." Ind. Code § 32-17-11-18(a) (2009).[1]

[15] Both Indiana's courts and the General Assembly have been down this path before, and those journeys inform our resolution of the current dispute.

[16] Indiana's statute on this subject has its basis in the Uniform Probate Code published in 1971, which addresses non-probate transfers of multiple party accounts in Article VI, Part 1.[2] In particular, Section 6-104(a) provides in pertinent part that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." The commentary to that section notes: "The effect of (a) of this section, when read with the definition of 'joint account' in 6-101(4), is to make an account payable to one or more of two or more parties a survivorship arrangement unless 'clear and convincing evidence of a different [intention]' is offered."[3] The commentary goes on to state that "[t]he

---

[1] The fact that there is no mention made of any right of survivorship does not change the nature of the joint account. Ind. Code § 32-17-11-4 (2002).

[2] Unif. Probate Code § 6-104(a) (1971).

[3] Unif. Probate Code, § 6-104 cmt. (1971).

underlying assumption is that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death."[4]

[17] The Proposed Final Draft of this state's Probate Reform Act of 1975, prepared by the State of Indiana Probate Code Study Commission, included Indiana Code section 30-3-4-4, on right of survivorship of nonprobate transfers of joint accounts.[5] Subsection a of the statute contained the language of Section 6-104(a) of the Uniform Probate Code quoted above.

[18] Aside from the general benefit of the legislature's frequent adoption of uniform acts, the written record attendant to the adoption is often helpful in interpreting the enactment. Particularly as respects the present dispute, the Study Commission Commentary explained: "Paragraph (a) of section 4 ought to prevent the result reached by the Court of Appeals of Indiana, Third District, in *Zehr v. Daykin* (October 25, 1972) —Ind. App.—288 N.E.(2d)174. It was clear from the court's opinion that it felt forced to the result, but it also seems clear that the result was contrary to the intention of the deceased. . . ."[6]

[19] The Commission's reference to *Zehr v. Daykin* invokes a case in which four CDs were issued totaling $16,000 payable to Eli F. Zehr or Donald E. Zehr as joint tenants with rights of survivorship. Eli deposited all of the funds for the CDs.

---

[4] Unif. Probate Code § 6-104(a) (1971).

[5] Probate Reform Act of 1975 (Proposed Final Draft 1974).

[6] Probate Reform Act of 1975 cmt. to Ind. Code § 30-3-4-4 (Proposed Final Draft 1974).

Upon Eli's death, the CDs were discovered in a safety deposit box held in his name alone and to which only he had a key. Eli received the interest on those CDs during his lifetime. The majority in *Zehr* affirmed the trial court's ruling that the CDs belonged to Eli's estate rather than to Donald, noting that there were no signature cards, deposit agreements, or other writings signed by either party to indicate a gift, using the inter vivos gift theory to resolve the matter. *Zehr v. Daykin*, 153 Ind. App. 537, 542, 288 N.E.2d 174, 177 (1972).

[20] Soon thereafter arose *Estate of Fanning*, 161 Ind. App. 380, 382, 315 N.E.2d 718, 720 (1974), in which the dissenting judge in *Zehr* authored a majority opinion purporting to overrule *Zehr* and holding under a contract theory that CDs purchased solely by Fanning, but issued to Fanning or her daughter, Marcella Seavey, with the right of survivorship, were payable to Marcella upon Fanning's death. Marcella had no knowledge of the existence of the CDs. Fanning had purchased them with her own money and they were found in Fanning's safety deposit box. The court held that "[w]ithout an expression to the contrary, the third party donee-beneficiary contract creates a rebuttable presumption that the usual rights incident to jointly owned property with the right of survivorship was intended." *Id.* at 722. "The burden of proof is upon the party who wishes to show a contrary intent from that expressed in the third party beneficiary contract." *Id.* The only remaining judge from the *Zehr* majority dissented, citing to *Zehr*. *Id.* at 723-24. The Probate Code Study Commission Commentary highlighted the decision in *Fanning*, saying: "The *Fanning* decision emphasizes that the presumed intent of the decedent is being

served. Section 4 will afford a variety of techniques enabling a depositor not only to assure that his precise intent is carried out but, also, to avoid trials and appeals as well."[7]

[21] The Supreme Court granted transfer in *Estate of Fanning*, 263 Ind. 414, 417, 333 N.E.2d 80, 83 (1975), and explicitly overruled *Zehr*. "Our review of the stipulated evidence and the reasonable inferences therefrom does not reveal a contrary intent from that expressed in the certificates. There is no evidence of fraud, undue influence, duress or mistake." *Id.* at 85.

[22] The Supreme Court's decision in *Fanning* and the Commission's position became statutory law effective January 1, 1977. The Non-Probate Transfers Act, added by Acts 1976, P.L. 123, contained Indiana Code section 32-4-1.5-4, titled "Ownership of accounts at death of a party, original payee or trustee," and subsection (a) that embodied the language of the Uniform Probate Code, as recommended by the Probate Code Study Commission. As a result of subsequent recodification, that language now appears in Indiana Code section 32-17-11-18(a).

[23] The Supreme Court subsequently confirmed that cases like *Zehr* and *Fanning* had been superseded by statute. *Estate of Banko*, 622 N.E.2d 476 (Ind. 1993). The parties in *Banko* debated whether the common law presumption of undue influence might function to render a joint account invalid, or whether the

---

[7] Probate Reform Act of 1975 cmt. to Ind. Code § 30-3-4-4 (Proposed Final Draft 1974).

statutory presumption of validity under the Non-Probate Transfers Act governed. The Court held that "[t]he legislative enactment of the survivorship presumption by unmistakable implication replaces the common law presumption of undue influence[]" and "that the common law presumption of undue influence arising between parties with certain relationships no longer exists under the [Non-Probate Transfer Act]." *Id.* at 480. Because the burden of proving a contrary intent remained with the decedent's daughter, she could not rest on the common law presumption, but had to come forward with clear and convincing evidence that the decedent intended a result different than the one that usually flows from opening a joint account. Because the testator's daughter had not done so, said the Court, the assets were properly not included in the testator's estate.

[24] We think the foregoing legislative history and case law mean that contentions about common law presumptions or the adequacy of bank processes do not function to vitiate the apparent intent of a decedent who places assets into an arrangement of joint ownership. Only "clear and convincing evidence of a different intention at the time the account is created," to quote the Code, will do so. Ind. Code § 32-17-11-18(a).

[25] Beth and Belinda have failed to establish by clear and convincing evidence a contrary intent at the time the account was created. Therefore, the trial court correctly concluded that Stephen and not the estate had ownership rights over the sums in those accounts.

## II.  Was a Second Hearing Proper?

[26] Beth and Belinda also argue that the trial court erred by *sua sponte*, and over their objection, setting a second hearing in the matter declaring that it lacked "sufficient information to decide the controversy."  Appellant's App. p. 39. The trial court set the hearing to address two topics:  (1) whether Ralph's signature on the documents adding Stephen to the account was genuine; and (2) whether the Bank would have allowed Stephen to unilaterally withdraw sums from the accounts during Ralph's lifetime.

[27] The Bank produced its manuals regarding account processes, like how to add a person to an account and the proper method to transfer ownership of a CD. Under our reading of Indiana Code section 32-17-11-18(a), taking in this evidence did not "affect the substantial rights of the parties."  Ind. Appellate Rule 66(A).

## Conclusion

[28] In light of the foregoing, we affirm the trial court's decision that the Estate of Ralph E. Herrin had no ownership interest in the four CDs.

[29] Affirmed.

Robb, J., and Brown, J., concur.