

FILED

Jun 15 2026, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

In the Matter of the Estate of William C. Bugher (Deceased), Elnor Bugher,

*Appellant-Respondent*

v.

William Mark Bugher and Robert C. Bugher, In Their Capacities as Co-Personal Representatives Herein,

*Appellees-Petitioners*

---

June 15, 2026

Court of Appeals Case No.
25A-EU-2826

Appeal from the Gibson Circuit Court

The Honorable Greg A. Granger, Special Judge

Trial Court Cause No.
26C01-2202-EU-131

---

**Opinion by Judge Brown**

**Brown, Judge.**

Elnor Bugher ("Elnor") appeals the trial court's October 24, 2025 judgment in favor of William Mark Bugher ("Mark") and Robert C. Bugher ("Robert," and together with Mark, "Personal Representatives") in their capacities as personal representatives of the Estate of William C. Bugher (the "Estate"). We reverse and remand.

**Facts and Procedural History**

William C. Bugher ("Chick") and Shirley K. Bugher ("Shirley") were married in 1958 and had two children, Mark and Robert. Chick was a farmer and owned real property in Gibson County. In February 1986, the court issued an Order on Dissolution of Marriage in cause number C-85-215 ("Cause No. 215") dissolving Chick and Shirley's marriage.[1] The court approved a property settlement agreement providing that Shirley would receive certain real estate, her IRA, and $562,000 payable in installments and Chick would receive real estate, farm equipment, and bank accounts. Also, paragraph D of the settlement agreement ("Paragraph D") stated:

> [Chick] shall promptly make and execute and keep in full force and effect a will under which he shall devise and bequeath his entire net

---

[1] Mark and Robert were adults at the time of the dissolution.

estate to his two (2) children, namely: Robert Clark Bugher and William Mark Bugher, in equal shares. . . . [Chick] may not defeat or void this provision of this Agreement by the use of gifts, joint property or trust unless such joint property, gifts or trusts are for the benefit of the parties' two (2) sons as herein set forth.

Exhibits Volume IV at 39-40. Chick later married Maria P. Bugher, and their marriage was dissolved in 1997.[2] On July 23, 1998, Chick signed a last will and testament which provided that the residue of his estate be distributed to The William C. Bugher Revocable Living Trust dated July 23, 1998 (the "Trust"). The Trust contained provisions related to the distribution, upon Chick's death, of certain farm property and equipment to Mark and the distribution of the remaining assets to Mark and Robert.

[3]     Chick and Elnor were married on August 22, 2009. Chick conveyed a residence he had constructed and the surrounding 27.03 acres (the "Residential Parcel") to himself and Elnor, as husband and wife, pursuant to a deed executed on November 18, 2009.[3] In July 2010, Chick designated Elnor as the beneficiary of a life insurance policy. At various times, Chick transferred funds into joint accounts held by himself and Elnor.[4] Chick primarily managed his

---

[2] The court approved a settlement agreement providing that Maria would receive real estate and $125,000.

[3] The deed stated that "WILLIAM C. BUGHER, individually and as Trustee of The William C. Bugher Revocable Living Trust, dated July 23, 1998, . . . CONVEYS and WARRANTS to WILLAM C. BUGHER and ELNOR BUGHER, husband and wife, . . . the following described Real Estate . . . ." Exhibits Volume IV at 77. Elnor indicated the home was "recently built right before [the] marriage." Transcript Volume II at 217.

[4] Chick and Elnor held joint accounts at First National Bank of Carmi (signature document dated October 31, 2013, stating "JOINT – WITH SURVIVORSHIP"), Wells Fargo (application dated March 30, 2014, stating "Joint Tenants with Rights of Survivorship"), Edward Jones (account agreement dated April 15,

and Elnor's household finances, and he "kept track of all the banking." Transcript Volume III at 8. Chick executed a power of attorney in August 2019 naming Elnor as his attorney in fact.[5] Chick passed away on October 5, 2021. Elnor consolidated the funds in the joint accounts into an account in her name.

[4] On February 9, 2022, Personal Representatives filed a Petition for Probate of Will, and on February 14, 2022, the court issued an order admitting Chick's last will and testament to probate. Mark and Robert, as beneficiaries of the Estate or the Trust, received over 1,300 acres of farmland as well as equipment, buildings, and other capital assets. Counsel for Personal Representatives sent a letter dated July 10, 2023, to Elnor's counsel, stating that it was a "settlement demand/compromise offer" and set forth proposed compromise terms which included Elnor transferring $3,000,000 and the Residential Parcel, subject to Elnor retaining a life estate, to the Trust. Exhibits Volume IV at 81. On September 8, 2023, Personal Representatives filed a "Petition to Enforce Written Demand or Instruction from Personal Representatives." Exhibits Volume IV at 97.

[5] In October 2024, Elnor filed a motion for summary judgment arguing that the sums remaining in the joint accounts and the Residential Parcel belonged to her

2014, stating "Joint Tenancy WROS"), Fifth Third Bank (statement for period ending February 12, 2016, stating "WILLIAM C BUGHER OR ELNOR BUGHER"), and Baird (account application dated August 4, 2019, stating "WILLIAM C BUGHER & ELNOR BUGHER JT TEN"). Exhibits Volume IV at 144, 150, 164, 178, 183. An account with Old National Investments in Chick's name alone with a balance of $182,352.33 on September 30, 2021, was distributed through the Estate.

[5] Elnor testified that she never took any action as Chick's attorney in fact.

upon Chick's death as a matter of law. She also argued that Mark and Robert failed to timely file a claim in the Estate or comply with Ind. Code Chapter 32-17-13, titled "Liability of Nonprobate Transferees for Creditor Claims and Statutory Allowances" ("Nonprobate Transferees Act"). The court denied the motion. In August 2025, the court held a bench trial.

[6]     On October 24, 2025, the trial court issued Findings of Fact, Conclusions of Law, and Judgment. The court found that Chick's transfer of the Residential Parcel to himself and Elnor and the placement of Elnor's name on the investment accounts violated the dissolution order entered in Cause No. 215. It found that "Elnor lacks clear and convincing evidence of the existence of a different investment account ownership intent than as prescribed in IC § 32-17-11-17, during Chick's lifetime." Appellant's Appendix Volume II at 21. The court found that Personal Representatives are entitled to judgment for the recovery of the fair market value of Chick's investments and bank accounts as of his date of death of $3,232,000 plus prejudgment interest of $592,533, and it ordered Elnor to convey the Residential Parcel to the Estate. On February 9, 2026, the court ordered Elnor to pay attorney fees of $79,157.50.[6]

## Discussion

[7]     We review the trial court's findings of fact under a clearly erroneous standard. *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002). However, we review

---

[6] The court's order does not state a basis for the award of attorney fees.

conclusions of law de novo. *Id.* A "clearly erroneous" judgment can result from application of the wrong legal standard to properly found facts, and in that situation we do not defer to the trial court. *Id.* (citation omitted). We are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law." *Id.* We look past these labels to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact. *Id.*

[8] Elnor argues that she became the sole owner of the funds remaining in the joint accounts and the Residential Parcel upon Chick's death, that Mark and Robert failed to comply with the requirements of the Nonprobate Transferee Act, that the dissolution court in Cause No. 215 was not permitted to control all future-acquired property or award property to the adult children of the divorcing parties, and that the court erred in awarding attorney fees. Personal Representatives argue that Chick was estopped from transferring his assets, that the transfers at issue were not nonprobate transfers, and that Chick owned the amounts in the joint accounts according to his percentage of contribution.

A. *Ownership*

1. *Joint Accounts*

[9] Ind. Code Chapter 32-17-11 governs interests in multiple party accounts.[7] Ind. Code § 32-17-11-17 provides, "[u]nless there is clear and convincing evidence of

---

[7] Ind. Code § 32-17-11-5 provides that, "[a]s used in this chapter, 'multiple party account' means any of the following types of accounts: . . . A joint account." Ind. Code § 32-17-11-4 provides: "As used in this chapter,

a different intent, during the lifetime of all parties, a joint account belongs to the parties in proportion to the net contributions by each party to the sums on deposit." Ind. Code § 32-17-11-18, which is titled "Ownership of accounts at death of a party; original payee or trustee," provides:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. . . .

Ind. Code § 32-17-11-18(a). Ind. Code § 32-17-11-18(d) provides that "[a] right of survivorship arising: (1) from the express terms of the account; or (2) under . . . this section; . . . cannot be changed by will." "Thus, Ind. Code § 32-17-11-18 creates the presumption that a survivor to a joint account is the intended receiver of the proceeds in the account." *Decker v. Zengler*, 883 N.E.2d 839, 842 (Ind. Ct. App. 2008) (citing *In re Estate of Banko,* 622 N.E.2d 476, 480 (Ind. 1993)), *reh'g denied*, *trans. denied*. Ind. Code § 32-17-11-19 provides, "[t]he provisions of section 18 of this chapter as to rights of survivorship are determined by the form of the account at the death of a party."

[10] Here, there is no question that Chick and Elnor held funds in joint accounts at several institutions. Pursuant to the unambiguous terms of Ind. Code § 32-17-11-18, upon Chick's death in October 2021, the funds remaining on deposit in

'joint account' means an account payable on request to one (1) or more of two (2) or more parties whether or not mention is made of any right of survivorship."

the joint accounts belonged to Elnor as the surviving party "unless there is clear and convincing evidence of a different intention at the time the account[s] [were] created." *See id.* The joint account documents admitted into evidence, which were executed over the span of several years (documents dated October 2013, March 2014, April 2014, February 2016, and August 2019), show Chick and Elnor as joint owners, and most of the documents expressly provide that Chick and Elnor were joint owners with rights of survivorship. Nothing in the documents suggests that Chick did not intend for the funds in the joint accounts to belong to Elnor in their entirety upon his death.[8] The presumption is that Elnor as the survivor to several joint accounts was the intended receiver of the proceeds in the accounts, and Personal Representatives did not establish by clear and convincing evidence of a different intention at the times the accounts were created.

[11] Upon Chick's death, the funds remaining on deposit in the joint accounts belonged to Elnor as the surviving party and not to the Estate. *See In re Est. of Herin*, 40 N.E.3d 495, 497-500 (Ind. Ct. App. 2015) ("[A]ny sums remaining on deposit at the death of a party to a joint account belong to the surviving party, 'unless there is clear and convincing evidence of a different intention at the time the account was created.' Ind. Code § 32-17-11-18(a). . . . Therefore, the trial court correctly concluded that Stephen [the surviving joint owner] and not the

---

[8] Chick did not add Elnor as a joint owner of his account with Old National Investments, suggesting that his intent was that the funds in that account would not belong to Elnor upon his death.

estate had ownership rights over the sums in those accounts."); *Matter of Guardianship of Walters*, 460 N.E.2d 1011, 1011-1014 (Ind. Ct. App. 1984) (upon wife's death, surviving husband was entitled to the entire balance of funds remaining in joint account held by husband and wife), *reh'g denied*.

[12] Additionally, as discussed below, Mark and Robert did not file a timely claim under, and did not comply with the requirements of, Ind. Code § 32-17-13-7 with respect to a claim to the funds in the joint accounts.

### 2. *Residential Parcel*

[13] In Indiana, there are three forms of concurrent ownership of real estate, including joint tenancy, tenancy in common, and tenancy by the entireties. *Flatrock River Lodge v. Stout*, 130 N.E.3d 96, 99 (Ind. Ct. App. 2019). A tenancy by the entireties exists only between spouses and is premised on the legal fiction that husband and wife are a single entity. *Id.* at 100 (citing *Underwood v. Bunger*, 70 N.E.3d 338, 342 (Ind. 2017)).

> Once an entireties estate has vested, each spousal tenant becomes seized of the entire estate, but neither is seized of any divisible part thereof. Thus, an entireties estate cannot be severed by the unilateral action of one of the tenants. Neither spouse has a separable interest in property held by such a tenancy, so a conveyance by just one tenant is insufficient to pass legal title. An essential trait of this tenancy is that it devolves upon the surviving spouse the ownership of the property in real estate, free and clear of the individual indebtedness of the other spouse. When one spouse dies, the survivor, being already seized of the whole, can acquire no new or additional interest due to the survivorship. Rather, the

survivor holds the entire estate, not by virtue of any right which he acquires as survivor, but by virtue of the original grant.

*Id.* (citing *Underwood*, 70 N.E.3d at 342-343 (citations and quotation marks omitted)). "If a husband and wife hold property as tenants by the entireties, 'the survivor ordinarily takes the whole estate, irrespective of any attempt by a decedent to make a different disposition by will.'" *Breuning as Co-Tr. of Willi Breuning & Ilene Breuning Living Tr. Agreement v. Breuning*, 276 N.E.3d 645, 650 (Ind. Ct. App. 2026) (citing 15 IND. LAW ENCYC. *Husband and Wife* § 47 (2026 Update)). "Survivorship is the most important incident of a tenancy by the entirety." *Id.* (citing *Baker v. Cailor*, 206 Ind. 440, 186 N.E. 769, 770 (1933)).

[14] Further, the Indiana Supreme Court has held that "Indiana has a longstanding legal presumption, recognized by statute and at common law, that spouses owning real property hold their interests as tenants by the entirety." *Underwood*, 70 N.E.3d at 340. "The presumption can be overcome if the instrument of conveyance reflects an intention to create some other form of concurrent ownership." *Id.* at 342.

[15] Here, the record reveals that, following his marriage to Elnor in August 2009, Chick executed a warranty deed on November 18, 2009, conveying the Residential Parcel to himself and Elnor. Specifically, the deed provides:

> "WILLIAM C. BUGHER, individually and as Trustee of The William C. Bugher Revocable Living Trust, dated July 23, 1998, . . . CONVEYS and WARRANTS to WILLAM C. BUGHER and ELNOR BUGHER, husband and wife, . . . the following described Real Estate . . . ."

Exhibits Volume IV at 77. Because Chick and Elnor were married, we presume that they held their interests in the Residential Parcel as tenants by the entirety. *See Underwood*, 70 N.E.3d at 340. Nothing in the conveying instrument "reflects an intention to create some other form of concurrent ownership." *See id*. at 342. Accordingly, Elnor as the surviving spouse "holds the entire estate, not by virtue of any right which [she] acquires as survivor, but by virtue of the original grant." *See id*. at 343.

[16] Upon Chick's death, the Residential Parcel by operation of law became the sole property of Elnor as the surviving spouse and not of the Estate. *See Breuning*, 276 N.E.3d at 651 ("Thus, upon Willi's death, the survivorship characteristic that is the most important incident of a tenancy by the entirety functioned exactly as it would if the Tennessee Property had not been transferred to the Trust: Ilene became the sole owner of the property by operation of law."); *see also Johnson v. Hicks*, 231 Ind. 353, 355-360, 108 N.E.2d 129, 130-132 (1952) ("The real estate devised by Item VII was held by the testator and Georgia Ann Hicks as tenants by the entirety under a warranty deed executed to them . . . . Since Item VII did nothing to change the title already vested in the widow as surviving tenant by the entirety under the deed, the widow had title as purchaser under the deed, and there was no necessity for her making any election to take under the law to prevent the will from affecting her title to this real estate.").

B.  *Cause No. 215*

[17] As for Cause No. 215 in which Chick's first marriage to Shirley was dissolved, the court approved a property settlement agreement that included the following:

> [Chick] shall promptly make and execute and keep in full force and effect a will under which he shall devise and bequeath his entire net estate to his two (2) children, namely: Robert Clark Bugher and William Mark Bugher, in equal shares. . . . [Chick] may not defeat or void this provision of this Agreement by the use of gifts, joint property or trust unless such joint property, gifts or trusts are for the benefit of the parties' two (2) sons as herein set forth.

Exhibits Volume IV at 39-40.

[18] The dissolution court divided and distributed the marital property of Chick and Shirley pursuant to their settlement agreement. Marital property consists of property owned by the divorcing parties before their final separation. *See* Ind. Code § 31-15-7-4. Property acquired by either Chick or Shirley after their separation was not part of the marital estate to be divided. *See Fischer v. Fischer*, 68 N.E.3d 603, 608-609 (Ind. Ct. App. 2017) ("property acquired after the final separation date should not be included in the marital pot"), *trans. denied*; *Crider v. Crider*, 26 N.E.3d 1045, 1048-1049 (Ind. Ct. App. 2015) ("Only property that is acquired *prior to* the date of final separation is subject to division by the trial court as part of the marital pot. In general, the date of 'final separation' refers to the date that the petition for dissolution is filed. . . . Wife's ownership interest in the Florida Property . . . does not constitute marital property because it was procured *subsequent to* the Filing Date.") (citations omitted). Further, courts generally do not have the authority to award an interest in marital property to the divorcing parties' children. *See Bainter v. Bainter*, 590 N.E.2d

1134, 1137 (Ind. Ct. App. 1992) ("A dissolution court is not authorized by case law or statutory law to award children of the marriage any interest in the marital property."); *Gower v. Gower*, 427 N.E.2d 703, 707 (Ind. Ct. App. 1981) (dissolution statutes "make no provision for disposition of a portion of the marital property to the children"). Thus, to the extent the dissolution court purported to distribute or award property which was not part of the marital estate or to award an interest in marital property to the divorcing parties' children, the court was without authority to do so.

[19] Moreover, to the extent that Chick agreed in Paragraph D to make and not revoke a will,[9] Indiana's Probate Code provides that "Claims" include "liabilities of a decedent which survive, whether arising in contract or in tort or otherwise, expenses of administration, and all taxes imposed by reason of the person's death." Ind. Code § 29-1-1-3(a)(3). The Indiana Supreme Court has held that the statutory definition of a "claim" in Ind. Code § 29-1-1-3 includes "an action for breach of a contract to make and not revoke a will." *Markey v. Est. of Markey*, 38 N.E.3d 1003, 1005 (Ind. 2015).

---

[9] We do not determine the extent to which such an agreement was valid, whether Chick was in breach, or what remedy would be available under the circumstances. Further, contrary to Personal Representatives' assertion, the doctrine of collateral estoppel is not applicable. Collateral estoppel, also referred to as issue preclusion, forecloses any "subsequent re-litigation of the *same fact or issue* where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Miller v. Patel*, 212 N.E.3d 639, 646 (Ind. 2023) (citations omitted). Three conditions lay the foundation for collateral estoppel: (1) a final judgment on the merits; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action." *Id*. The second requirement will fail "if the issue is one that was *not actually litigated and determined*." *Id.* The issues in the present litigation, and the issue of whether Chick breached the terms of his agreement in Paragraph D, were not actually litigated and determined in Cause No. 215.

[20]     Ind. Code Chapter 32-17-13, the Nonprobate Transferees Act, relates to

nonprobate transfers.  Ind. Code § 32-17-13-2 provides that "a transferee of a

nonprobate transfer is subject to liability to a deceased transferor's probate

estate for: (1) allowed claims against the deceased transferor's probate estate;

and (2) statutory allowances to the decedent's spouse and children; to the extent

the decedent's probate estate is insufficient to satisfy those claims and

allowances."  Ind. Code § 32-17-13-7(d) provides that a "proceeding under this

chapter may not be commenced" unless:

> (1)     the claimant files a claim in the deceased transferor's estate
> and delivers a copy of the claim to each nonprobate
> transferee known by the claimant not later than five (5)
> months after the deceased transferor's death;
>
> (2)     the claimant delivers a written demand[10] for the proceeding to:

---

[10] Ind. Code § 32-17-13-7(e) provides that the written demand must include the following:

> (1)     The cause number of the deceased transferor's estate.
>
> (2)     A statement of the claimant's interest in the deceased transferor's estate and nonprobate transfers, including the date on which the claimant filed a claim in the deceased transferor's estate.
>
> (3)     A copy of the claim attached as an exhibit to the written demand.
>
> (4)     A description of the nonprobate transfer, including:
>
> > (A)     a description of the transferred asset, as the asset would be described under IC 29-1-12-1, regardless of whether the asset is part of the decedent's probate estate, subject to the redaction requirements of the Indiana administrative rules, established by the Indiana supreme court;
> >
> > (B)     a description or copy of the instrument by which the deceased transferor established the nonprobate transfer, subject to the redaction requirements of the Indiana administrative rules, established by the Indiana supreme court; and
> >
> > (C)     the name and mailing address of each nonprobate transferee known by the claimant.

> > > (A)   the personal representative of the deceased transferor's estate; and
>
> > > (B)   each known nonprobate transferee; and
>
> > (3)   except as provided in subsection (j), the written demand has been filed in the estate not later than seven (7) months after the deceased transferor's death.

Further, Ind. Code § 32-17-13-8 provides, "[a] proceeding under this chapter must be commenced not later than nine (9) months after the deceased transferor's death . . . ."

[21]   Here, Chick died on October 5, 2021.  Robert and Mark did not file a claim in the Estate and deliver a copy of the claim to Elnor, or deliver a written demand for the proceeding and file the written demand in the Estate, within the timeframes mandated above.[11]  Any claim against Elnor based on Chick's alleged agreement to make a will was untimely and did not comply with Ind. Code § 32-17-13-7.[12]

---

[11] The July 10, 2023 letter from Robert and Mark's attorney to Elnor's attorney was not "a written demand for the proceeding" under Ind. Code § 32-17-13-7(e).

[12] Mark and Robert's failure to file a timely claim under, and comply with the requirements of, Ind. Code § 32-17-13-7 also provides support for the conclusion that the trial court erred in finding that Personal Representatives are entitled to judgment for the recovery of the value of Chick's investments and bank accounts as of his date of death.  We further note that the term "nonprobate transfer" does not include a "survivorship interest in a tenancy by the entireties real estate" or the "death proceeds of a life insurance policy."  *See* Ind. Code § 32-17-13-1 ("nonprobate transfer" does "not include a transfer at death of: (1) a survivorship interest in a tenancy by the entireties real estate; (2) a life insurance policy or annuity; [or] (3) the death proceeds of a life insurance policy or annuity").

We conclude that, upon Chick's death, the funds remaining on deposit in the joint accounts and the Residential Parcel became the sole property of Elnor and not the Estate. For the foregoing reasons, we reverse and remand with instructions for the trial court to vacate its October 24, 2025 judgment and its February 9, 2026 order awarding attorney fees and to enter judgment in favor of Elnor.

Reversed and remanded.

Altice, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Todd I. Glass
Savannah L. Mundy
Fine & Hatfield, A Professional Corporation
Evansville, Indiana

ATTORNEYS FOR APPELLEES

Maurice E. Doll
Aaron D. Doll
Doll & Sievers Attorneys at Law LLC
Vincennes, Indiana